**NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, Plaintiff,**

v.

**Timothy J. MAHER, defendant and third-party plaintiff, Respondent,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, third-party defendant, Appellant.**

No. 47318.

Supreme Court of Minnesota.

Sept. 23, 1977.

Cousineau, McGuire, Shaughnessy & Anderson and Dean D. Larsen, Minneapolis, for appellant.

Mahoney, Dougherty & Mahoney, Kenneth P. Gleason, and James M. Mahoney, Minneapolis, for respondent.

PER CURIAM.

The basic action generating this appeal was one by plaintiff, Northwestern National Bank, to recover from Timothy Maher the balance due under a security agreement between them entered into when Maher purchased a 1972 Mercury Cougar in July 1972.

Maher, in January 1974, entered into a listing agreement which authorized the American Auto Listing Company to offer the vehicle for sale subject to his approval. Possession of the vehicle was turned over to the listing firm.

In February 1974 Maher renewed and continued, as he was obligated to do under his security agreement with the bank, a family automobile policy insuring him for

liability and collision damage. (The policy was issued by third-party defendant, The United Services Automobile Association.) The policy listed the 1972 Mercury as an "owned automobile" for which premium charges were designated and paid. On January 28, 1974, the American Auto Listing Company transferred and sold the Mercury automobile to one Dennis Peterson without the knowledge and consent of Maher. American Auto Listing Company did not account to Maher for the sale price they received from Peterson. Maher had agreed that his approval was not needed for any sale that would net him at least $2,800 in cash. American Auto Listing Company sold the car for $3,200, but only $1,431 was cash because American Auto Listing Company took a trade-in for the balance from Peterson. Maher has never signed over the registration card on the vehicle.

In March of 1974 the Mercury, while being operated by Peterson, was involved in an accident and damaged in the sum of $1,689.84.

In this action by the bank to recover the unpaid balance due to it under the security agreement, Maher impleaded as a third-party defendant the insurance company, seeking to recover under the collision coverage of the policy.

The insurance company defended this claim on the basis that Maher had no interest whatever in the automobile beyond the date of the sale to Peterson and that the accident occasioned no loss to him.

This case was tried pursuant to a stipulation of facts and submitted to the court for a decision pursuant to a motion by the third-party defendant for summary judgment. The trial court ordered judgment in favor of the bank and against Maher in the sum of $3,000, the stipulated amount due, and ordered judgment against the insurance company and in favor of Maher in the sum of $1,589.84, the amount of the damage sustained in the accident less the deductible provided in the policy. The trial court found that Maher, despite the sale of the automobile to Peterson, had an insurable interest at the time of the occurrence of the damage to the automobile. This appeal is by the insurance company from the judgment entered against the company.

Under the automobile policy issued to Maher, the collision coverage provided that the company would "pay for loss caused by collision to the owned automobile" in excess of the deductible amount. The policy defines "owned automobile" as "a private passenger * * * automobile described in this policy for which a specific premium charge indicates coverage is afforded."

The defendant insurance company urges that the term "owned automobile" would require Maher to be the holder of the legal title to the subject vehicle as a condition precedent to coverage. This argument blends into its position that by "entrusting" the car to American Auto Listing Company Maher denied himself any right or interest in the automobile when that company sold the car to Dennis Peterson. It may very well be that, pursuant to Minn.St. 336.2–403(1) and (2), Maher's title to the car passed to Peterson when he purchased the car from the listing company. This section of the Commercial Code was designed to protect persons who buy from merchants out of inventory.

But as the trial court so properly held in part:

"It is unnecessary, however, to decide who was the legal owner of the Mercury on the date of the collision because legal title is not required in order to have an insurable interest. The Minnesota Supreme Court has even upheld coverage under an insurance policy when the insured had no insurable interest at the time the policy was issued. * * * At the time that Maher renewed his policy he believed himself to be the owner of the Mercury and knew he was obligated to carry insurance thereon. It was not purchased as a wagering contract.

"The Minnesota Supreme Court has ruled that an insurable interest exists where the insured can suffer a loss if the subject property is damaged.

" 'It is not necessary that the insured have an absolute right of property in order to have an insurable interest. All

that is necessary is that he will suffer a loss if the property is destroyed regardless of whether he has any title to, lien upon, or possession of the property itself.' *Nathan v. St. Paul Mutual Insurance Company,* 243 Minn. 430, 431, 68 N.W.2d 385, 387 (1955).

" * * * insurable interest is sui generis and may exist where there is not any present property, but only an inchoate right * * *. The authorities all agree that it is not necessary that the insured should have an absolute right of property, and that he has an insurable interest, if, by the destruction of the property, he will suffer a loss, whether he has or has not any title to, lien upon or possession of the property itself. *Banner Laundry Company v. Great Eastern Casualty Company,* 148 Minn. 29, 33–4, 180 N.W.2d [180 N.W.] 997, 999 (1921)."

When the reason for the purchase of an insurance policy is considered, the insurable interest becomes more clear. One of the reasons Maher took out this policy was that he was obligated to so do. The damage to the automobile reduced the value of the security. The sale was never approved by Maher because he never did receive the minimum $2,800 in cash his agreement with American Auto Listing Company called for as a precondition to his consent to the sale. Thus his loss was insured under the policy in suit.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.