Carl HARBAL, et al., Respondents,

v.

The FEDERAL LAND BANK OF ST. PAUL, et al., Defendants,

MHF of Freeborn County, Inc., Appellant (C1–89–830), Defendant (C5–89–894),

and

Magnuson Farms, Inc., applicant for intervention, Appellant (C5–89–894).

Nos. C1–89–830, C5–89–894.

Court of Appeals of Minnesota.

Dec. 19, 1989.

Review Denied Feb. 21, 1990.

David A. Joerg, Joerg & Benson, Preston, for respondents.

Henry J. Savelkoul, Daryl D. Bail, Christian, Slen, Savelkoul, Johnson, Broberg & Kohl, Albert Lea, for appellant (C1–89–830), defendant (C5–89–894).

Heard, considered and decided by FOLEY, P.J., and KALITOWSKI and STONE*, JJ.

## OPINION

BRUCE C. STONE, Judge.

This appeal involves two actions. The first and principal action arises out of an entry of summary judgment by the Freeborn County District Court voiding the transfer of foreclosed agricultural property and requiring the mortgagee to offer the property on the same terms to the foreclosed mortgagor pursuant to the right of first refusal mandated by Minn.Stat. § 500.24, subd. 6(a) (Supp.1987). The second action arises out of the trial court's order denying a former vendee's motion to intervene in the principal action. By this court's order, the actions were consolidated.

## FACTS

On April 19, 1979, respondent's Carl and Elizabeth Harbal (Harbals) sold agricultural property located in Freeborn County to appellant (and applicant for intervention) Magnuson Farms, Inc. (Magnuson Farms) pursuant to a contract for deed for $1,000,000. As part of this transaction, the Harbals mortgaged the property to respondent Federal Land Bank of St. Paul, now Farm Credit Bank of St. Paul (FLB) for $440,000. Magnuson Farms took possession of the land but subsequently defaulted on its payments. Thereafter, the Harbals commenced cancellation proceedings on the contract for deed pursuant to Minn.Stat. § 559.21 (1986).

The Harbals recorded their notice of cancellation of the contract for deed and affidavit of noncompliance and attempted to take possession of the farm. Magnuson Farms, however, refused to vacate. Consequently, the Harbals filed an unlawful detainer action which later was properly converted to an ejectment action. The trial court entered partial summary judgment for the Harbals, finding that the Harbals had been entitled to possession of the farm since the expiration of the 60–day cancellation period.

During the dispute over the property, the Harbals were unable to make payments to the FLB and defaulted under the terms of their mortgage and promissory note. The FLB foreclosed on the property and a sheriff's sale was held on August 20, 1987. The FLB bid in the total amount of the mortgage debt, $581,690.50, and received a sheriff's certificate for the foreclosed property.

On March 21, 1988, the FLB entered into a purchase agreement with appellant MHF of Freeborn County, Inc. (MHF), an entity with substantial family ties to Magnuson Farms. Pursuant to the purchase agreement, the FLB agreed to assign to MHF the sheriff's certificate for the foreclosed property for $350,000. The purchase agreement was made specifically subject to "any state or federal rights of first refusal claimed or in fact owned by the aforesaid former owners." FLB subsequently executed and delivered to MHF a document of assignment.

Prior to the assignment, the FLB neither notified the Harbals of its offer to transfer the property to MHF, nor gave the Harbals

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

the opportunity to purchase the property for the price offered by MHF.

The Harbals' statutory right of redemption under Minn.Stat. § 580.23, subd. 2 (1986) was not exercised and expired on August 20, 1988, one year after the sheriff's sale. Thereafter, MHF leased the property to Magnuson Farms.

The Harbals brought this action on June 17, 1988, alleging violations of their state and federal rights of first refusal. The Harbals requested that the FLB be ordered to extend to them a right of first refusal to repurchase their farm and, if the Harbals accepted the offer and performed in accordance with the requirements of the statute, that the transfer of the property to MHF be adjudged void.

The Harbals subsequently moved for summary judgment in the district court action. The parties initially agreed to present a stipulation of facts upon which the motion was to be decided. The parties, however, failed to agree on a stipulation and each presented the court with a proposed stipulation. In their cover letter enclosing their proposed stipulation, however, appellants acknowledged that "defendants concur that there are no material facts in dispute * * *." With minor exceptions, the trial court adopted the Harbals' proposed stipulation of facts, incorporating it into its own findings.

The trial court granted the Harbals' motion for summary judgment on February 13, 1989. The judgment provided that the sale from FLB to MHF was subject to the Harbals' right of first refusal and required the FLB to extend the Harbals the opportunity to repurchase the property. The judgment also provided that in the event the Harbals elected to purchase the farm from FLB, the transfer of the property from the FLB to MHF and MHF's assignment of the sheriff's certificate to the First National Bank of Austin as collateral for a loan would be null and void.

The FLB complied with the trial court's judgment and extended to the Harbals its notice of offer to sell agricultural land pursuant to the statute. The Harbals exercised their statutory right and repurchased their farm.

Less than a month after entry of summary judgment, on March 6, 1989, Magnuson Farms moved to intervene in the underlying action. At the hearing to determine the motion for intervention, the trial court repeatedly raised the issue of whether Magnuson Farms and MHF were the same entity. Magnuson Farms, Inc. and MHF of Freeborn County, Inc. are both Minnesota corporations and are owned, controlled and operated by the Magnuson family or for the benefit of the Magnuson family. Dennis Magnuson is the president of both corporations. His wife Diana is an officer of both and records the minutes at the board meetings of both corporations. Dennis and Diana Magnuson own all the shares of Magnuson Farms, Inc. The sole shareholder of MHF of Freeborn County, Inc. is a trust for the benefit of the Magnusons' children. Diana Magnuson handles the day-to-day financing of both corporations.

## ISSUES

1. Did the trial court err in granting summary judgment holding that appellant FLB "acquired" the property within the meaning and intent of Minn.Stat. § 500.24 and thereby entitling respondent Harbals to a statutory right of first refusal with respect to their foreclosed agricultural property?

2. Did the trial court err in ruling the assignment of the sheriff's certificate by FLB to MHF was a sale of property subject to Minn.Stat. § 500.24?

3. Did the trial court err in denying appellant Magnuson Farms' motion to intervene?

## ANALYSIS

■ In order to extend to financially distressed farmers who had lost their farms to corporate lenders an opportunity to repurchase their farms, the legislature included in the Omnibus Farm Bill of 1986 a right of first refusal. Minn.Stat. § 500.24, subd. 6(a) (Supp.1987) provides in part that:

A state or federal agency or a corporation, other than a family farm corpora-

**446**

tion or an authorized farm corporation, may not lease or sell agricultural land or a farm homestead that was *acquired* by enforcing a debt against the agricultural land or farm homestead, including foreclosure of a mortgage, accepting a deed in lieu of foreclosure, terminating a contract for deed, or accepting a deed in lieu of terminating a contract for deed, before offering or making a good faith effort to offer the land for sale or lease to the immediately preceding former owner at a price no higher than the highest price offered by a third party that is acceptable to the seller or lessor.

(Emphasis added).

1. In this case, appellants argue that the trial court erred in granting summary judgment and in broadly construing Minn. Stat. § 500.24, subd. 6 to require the FLB to extend a right of first refusal to the Harbals. The standard of review for summary judgment is whether the trial court erred in applying the law and whether there are any genuine issues of material fact. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

The construction of a statute is a question of law for the court and thus is subject to this court's de novo review on appeal. *See Hibbing Education Association v. Public Employment Relations Board*, 369 N.W.2d 527, 529 (Minn.1985); *In re Welfare of M.J.M.*, 416 N.W.2d 142, 146 (Minn. Ct.App.1987).

Appellants argue that by focusing on the word "acquired" in the statute, the trial court erroneously extended the operation of the statute beyond its plain meaning. Appellants urge that while a holder of a sheriff's certificate may become the owner of land, title does not vest until the statutory redemption period has run. Appellants contend that because FLB assigned the sheriff's certificate to MHF before the running of the redemption period, FLB never acquired the land within the meaning of the statute and had no obligation to extend to the Harbals an opportunity to repurchase the foreclosed property.

■ In Minnesota, a foreclosed mortgagor retains the right to possession of the property and to profits during the redemption period. *See Ewert v. Anderson*, 359 N.W.2d 293, 297 (Minn.Ct.App.1984). The sheriff's certificate operates to convey the land at the end of the redemption period. Minn.Stat. § 580.12 (1986) provides in part:

The certificate shall be recorded within 20 days after such sale, and when so recorded, *upon expiration of the time for redemption, shall operate as a conveyance* to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance.

(Emphasis added).

Although it is clear under Minnesota law that title to foreclosed property does not vest until the running of the redemption period, it remains unclear whether title must actually vest for property to be "acquired" under Minn.Stat. § 500.24. Ambiguity exists as to the intended meaning of the word "acquire" in the statute. It could mean, as appellants suggest, vesting of actual title in the holder of the sheriff's certificate or it could involve acquisition of a lesser interest in the land. Black's Law Dictionary defines "acquire" as:

[t]o gain by any means, usually by one's own exertions; to get as one's own; to obtain by search, endeavor, investment, practice, or purchase; receive or gain in whatever manner; come to have.

The interpretation to be given to a statute is dependent on the legislature's intent in adopting the bill. The statute encompassing the first refusal right is remedial, the purpose of which is:

to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 1 (1986).

■ As a remedial statute, Minn.Stat. § 500.24, subd. 6 must be liberally construed to give effect to its legislative in-

tent. *See La Bere v. Palmer*, 232 Minn. 203, 205, 44 N.W.2d 827, 829 (1950).

The legislature, by requiring the foreclosing agency or corporation to offer to sell the land back to the former owner, at the price offered by a third party, clearly expressed its preference that foreclosed property remain in the possession of its former owner whenever possible. If the term "acquire" were interpreted to mean when title actually vests in the lending corporation, the right of first refusal would be denied to the former owner during the redemption period following the foreclosure sale. During the redemption period, the corporate lender would be free to sell its interest in the land by assigning the sheriff's certificate without first having to offer it to the former owner. Such an interpretation would be contrary to the remedial nature of the statute and the legislature's intent.

■ It is clear that the purchaser at a sheriff's sale cannot take immediate possession of the land or enjoy its benefits during the one-year statutory redemption period; merely holding the sheriff's certificate does not vest fee title to the property. Such a purchaser, however, does acquire some type of vested ownership interest in the land. This interest is not subject to divestment, except for the limited redemption rights of the foreclosed owner. *See Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983); *Ewert*, 359 N.W.2d at 293. The remedial purposes of the statute will be better served by a broader construction of the term "acquire" to include the interests acquired on the date of the sheriff's sale.

■ 2. Appellants additionally argue that there was no sale of agricultural land which could trigger an obligation to extend the right of first refusal to the Harbals. Appellants contend that an assignment of the sheriff's certificate is not a sale within the meaning of the statute. Appellants also contend that when the FLB assigned the sheriff's certificate, it also assigned its obligation to extend the right of first refusal to the Harbals. MHF, however, is a "family farm corporation" and, as such,

has no obligation to extend the first refusal right. *See* Minn.Stat. § 500.24, subd. 6.

■ Moreover, FLB, as a lending corporation, has the obligation to divest itself of foreclosed property. *See* Minn.Stat. § 500.24, subd. 3(i) (1986). MHF, on the other hand, as a farm corporation, has no apparent reason to divest itself of a useful business asset. A narrow, constricted reading of the statute would circumvent its purpose by allowing lending corporations which acquire an interest in agricultural property by the enforcement of a debt to transfer the property without first offering to sell it to the foreclosed owners. Such a result is inconsistent with the remedial objectives of Minn.Stat. § 500.24. We therefore hold that the FLB's transfer of the property through the assignment of the sheriff's certificate prior to running of the redemption period is tantamount to a sale of property under the statute.

■ Appellants argue that it was error for the court to order reconveyance of the property where performance was impossible because title had passed to another party by foreclosure action where no redemption had occurred. *See Baumgartner v. Corliss*, 115 Minn. 11, 16–17, 131 N.W. 638, 640–41 (1911).

Pursuant to Minn.Stat. § 500.16 (1986), the interest in a sheriff's certificate is freely alienable. MHF contends that it has no duty under section 500.24 to the Harbals merely because they obtained title to the property through operation of law. However, as previously noted, the purchase agreement between FLB and MHF was made specifically subject to "any state or federal rights of first refusal claimed or in fact owned by the aforesaid former owners."

The Minnesota Supreme Court, however, has held in *M.L. Gordon Sash & Door Co. v. Mormann*, 271 N.W.2d 436, 440 (Minn. 1978), that the holder of an option to purchase real estate may have an interest that equity will protect. Such an option holder may "maintain an action for a specific performance against a purchaser who with knowledge of the option acquired subse-

quent interests in the property." *Id.* at 441. In this case, MHF may be charged with knowledge of Harbals' right of first refusal by virtue of the inclusion of the provision in their purchase agreement granting them title subject to first refusal rights of the former owners. The trial court was well within its authority in awarding the equitable relief necessary for proper enforcement of the statutory right of first refusal, including avoidance of the sale between MHF and FLB.

■ 3. In reviewing orders concerning intervention of right under Minn.R.Civ.P. 24.01, an appellate court must independently determine the appropriateness of such an order. *Norman v. Refsland,* 383 N.W.2d 673, 676 (Minn.1986); *Erickson v. Bennett,* 409 N.W.2d 884, 886 (Minn.Ct. App.1987).

Rule 24.01 establishes a four-part test a non-party must meet before being allowed to intervene as a matter of right:

(1) a timely application for intervention;

(2) an interest relating to the property or transaction which is the subject of the action;

(3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and

(4) a showing that the party is not adequately represented by the existing parties.

*Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 207 (Minn.1986); *Erickson,* 409 N.W.2d at 886.

■ The timeliness of an application to intervene must be determined by the particular circumstances of the case, including such factors as how far the suit has progressed, the reason for any delay in seeking intervention, and any prejudice to the existing parties because of the delay. *Erickson,* 409 N.W.2d at 886. Here, Magnuson Farms did not make its application to intervene in the underlying action until March 6, 1989, after the trial court had ruled on the summary judgment motion.

Magnuson Farms cannot seriously argue that it was without notice its rights would be impaired and should not be allowed to rely on its own underestimation of the merits of the Harbals' claim to support its claim to a right of intervention.

Magnuson Farms is owned and operated by the same family that owns and operates MHF, and is also represented by the same counsel. Although the sole shareholder of MHF is a trust for the Magnuson children, Dennis Magnuson is the president of both MHF and Magnuson Farms. MHF has been involved in this litigation since its inception. Magnuson Farms, thus, clearly had notice of the litigation and had reason to presume that its rights would be directly implicated.

The Minnesota Supreme Court has held that intervention would not be allowed where the intervenor was aware of the lawsuit and permitted the trial to proceed, waiting to see if the decision would be favorable to its interest. *State Automobile and Casualty Underwriters v. Lee,* 257 N.W.2d 573, 576 (Minn.1977). Here, Magnuson Farms did not attempt to intervene until after the court found in favor of the Harbals. Because Magnuson Farms was fully aware of the circumstances of the litigation involving its claimed interest, the trial court was clearly justified in denying this motion to intervene after entry of summary judgment.

■ In this case, Magnuson Farms argues that it has a substantial interest in the action because of the collateral estoppel effect of the trial court's findings of fact. Magnuson Farms argues that the trial court incorporated into its findings of fact an erroneous date on which the party's contract for deed was cancelled, thereby prejudicing its interest in a separate proceeding. *See, e.g., Miller v. Northwestern National Insurance Co.,* 354 N.W.2d 58, 62 (Minn.Ct.App.1984). The trial court's findings, however, will not have collateral estoppel effect, because although the issue was actually litigated and determined, it was not essential to the determination of the judgment in this action.

The doctrine of collateral estoppel applies when it affirmatively appears that the issue involved has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment. The principle does not apply, however, to issues incidentally or collaterally decided.

*Anderson v. Mikel Drilling Co.*, 257 Minn. 487, 491, 102 N.W.2d 293, 297 (1960) (footnotes omitted).

Magnuson Farms argues that the trial court erred in determining that it was adequately represented because the property interests of MHF are different from those of Magnuson Farms.

It is clear, however, that Magnuson Farms and MHF have similar and compatible interests in the foreclosed property. The trial court observed that MHF consistently, throughout the litigation, advanced arguments on behalf of and for the benefit of Magnuson Farms, including the claim of a right of first refusal for Magnuson Farms. Because there is nothing to indicate that Magnuson Farms would make any other argument or assert any other claims other than those already advanced on their behalf, intervention is not warranted.

## DECISION

The remedial nature of Minn.Stat. § 500.24, subd. 6 compels us to find that the word "acquire" be broadly construed to include the interest acquired by a purchaser of agricultural property at a foreclosure sale prior to the running of the redemption period.

Appellant Magnuson Farms failed to establish that its attempted intervention in the underlying action was authorized by law. The decision of the trial court is affirmed.

Affirmed.