David C. McGUIRE, et al., Respondents,

v.

The COUNTY OF SCOTT, Appellant.

No. CX–94–1652.

Court of Appeals of Minnesota.

Dec. 27, 1994.

Review Denied March 14, 1995.

Leo G. Stern, Jay Quam, Fredrikson & Byron, P.A., Minneapolis, for respondents.

James A. Terwedo, Scott County Atty., Brian A. Nasi, Asst. County Atty., Shakopee, for appellant.

Considered and decided by AMUNDSON, P.J., and LANSING and KLAPHAKE, JJ.

## OPINION

LANSING, Judge.

A county seeks to raise the affirmative defense of "no feasible and prudent alternative" in an action brought under the Minnesota Environmental Rights Act alleging that a proposed highway project violates a state noise regulation. The district court ruled that the affirmative defense is not available to defendants in actions based on regulation violations, and we affirm.

## FACTS

David McGuire and several neighbors brought suit under the Minnesota Environmental Rights Act (MERA) challenging Scott County's proposed project to realign and reconstruct County State Aid Highway (CSAH) 18 in Shakopee and Prior Lake. The project would expand a portion of the existing two-lane highway to four lanes, resulting in increased traffic and noise on the road abutting McGuire's property.

McGuire argued at trial that the existing traffic volume already violates the noise pol-lution rules issued by the Minnesota Pollution Control Agency (PCA) and that the project would result in further rule violations. Scott County admitted that CSAH 18 currently violates the PCA's nighttime noise rule and that noise levels would increase after completion of the project, but argued that there was "no feasible and prudent alternative" to the project. McGuire countered that the county could not assert this affirmative defense because MERA precludes its application to actions based on the violation of a government environmental standard.

The district court agreed with McGuire's reading of MERA and granted partial summary judgment. The county appeals.

## ISSUE

In a claim under MERA alleging that a county has violated a PCA noise pollution rule, can the county assert the affirmative defense of "no feasible and prudent alternative"?

## ANALYSIS

In setting out the parties' respective burdens of proof, MERA distinguishes between an action premised on the violation of a government environmental standard and one alleging a general material adverse effect on the environment.

In any action maintained under section 116B.03, where the subject of the action is conduct governed by an environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit * * *, whenever the plaintiff shall have made a prima facie showing that the conduct of the defendant violates or is likely to violate said environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit, the defendant may rebut the prima facie showing by the submission of evidence to the contrary.

In any other action maintained under section 116B.03, whenever the plaintiff shall have made a prima facie showing that the conduct of the defendant has, or is likely to cause the pollution, impairment, or destruction of the air, water, land or

other natural resources located within the state, the defendant may rebut the prima facie showing by the submission of evidence to the contrary. The defendant may also show, by the way of an affirmative defense, that there is no feasible and prudent alternative and the conduct at issue is consistent with and reasonably required for the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction. Economic considerations alone shall not constitute a defense hereunder.

Minn.Stat. § 116B.04 (1992). All reported MERA cases have been decided under the burden of proof procedure outlined in the second paragraph. *See, e.g., State by Archabal v. County of Hennepin*, 495 N.W.2d 416 (Minn.1993) (analyzing prudent and feasible alternatives to building county jail on historic site); *Urban Council on Mobility v. Minnesota Dep't of Natural Resources*, 289 N.W.2d 729 (Minn.1980) (analyzing prudent and feasible alternatives to building highway over a lake); *Minnesota Public Interest Group v. White Bear Rod & Gun Club*, 257 N.W.2d 762 (Minn.1977) (analyzing material adverse effect of noise pollution created by gun club expansion); *County of Freeborn by Tuveson v. Bryson*, 309 Minn. 178, 243 N.W.2d 316 (Minn.1976) (analyzing prudent and feasible alternatives for proposed highway over marsh); *State ex rel. Wacouta Twp. v. Brunkow Hardwood Corp.*, 510 N.W.2d 27 (Minn. App.1993) (analyzing prudent and feasible alternatives to logging near eagle roosts); *see also* David P. Bryden, *Environmental Rights in Theory and Practice*, 62 Minn.L.Rev. 163 (1978) (analyzing first five years of litigation under MERA and noting no cases raised under the first paragraph). Thus this case presents a question of first impression.

We agree with the district court's plain meaning interpretation of Minn.Stat.

§ 116B.04. *See Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn. 1986) (when statute is clear and unambiguous, the plain meaning must be given effect). The statute describes the parties' respective burdens of proof in separate paragraphs, with the first pertaining to actions asserting a violation of a government standard and the second, to "other" actions alleging a material adverse effect on the environment. The first paragraph limits defendants to rebutting the prima facie showing of a violation. The second paragraph expressly allows defendants to plead the affirmative defense of "no feasible and prudent alternative," in addition to offering evidence to rebut the prima facie case. The supreme court acknowledged this distinction when deciding an early case brought under Minn.Stat. § 116B.04's second paragraph. *White Bear Rod & Gun Club*, 257 N.W.2d at 768 (reasoning that the affirmative defense was available in "any action which does not concern conduct governed by an environmental quality standard").

The texts of several state environmental rights or protection acts passed during the same time period as MERA and also modeled after Michigan's Environmental Protection Act, support reading Minn.Stat. § 116B.04 as limiting the affirmative defense to cases brought under the second paragraph. New Jersey's Environmental Rights Act and Indiana's environmental suit statute provide distinct defenses for actions based on governmental standards violations versus those based on a general material adverse effect. *See* N.J.Stat.Ann. §§ 2A:35A-4—2A:35A-7 (West 1987) (prudent and feasible alternative analysis only in cases of general material adverse effect, not when governmental regulations violated); Ind.Code Ann. § 13-6-1-2 (Burns 1992) (defendant can make prima facie defense by showing compliance with appropriate rule, or when no applicable rule, by showing no feasible and prudent alternative).[1]

---

1. Of the other three state environmental rights statutes, Connecticut's and South Dakota's provide no explicit cause of action for violation of governmental regulations, and Florida's provides no explicit cause of action for a general material adverse effect. *See* Conn.Gen.Stat. §§ 22a-14—22a-20 (1993); S.D.Codified Laws Ann. §§ 34A-

10-1—34A-10-17 (1992); Fla.Stat.Ann. § 403.412 (1993). Interestingly, Michigan's environmental protection act, the model for MERA, provides a basis for challenging the validity of governmental pollution standards when they are "involved" in a suit for general material adverse effect, but gives the "no prudent and feasible

The legislative history of MERA is also consistent with an intent to limit the availability of the affirmative defense. The debate over the "no feasible and prudent alternative" analysis originally focused on whether it should be an affirmative defense and if so, the role of economic considerations in the analysis, not whether it applied to both types of actions. Note, *The Minnesota Environmental Rights Act*, 56 Minn.L.Rev. 575, 579 (1972). Subsequent amendments reflect a decision to allow an affirmative defense but to prohibit "economic considerations alone" from constituting a defense. *See* State of Minnesota Journal of the House, 1971 Reg. Sess., at 2428 (1971).

The first paragraph of Minn.Stat. § 116B.04 and the addition of "other" to the opening sentence of the second paragraph resulted from amendments introduced by the PCA and adopted by the House Judiciary Committee. *See The Minnesota Environmental Rights Act, supra*, at 582; State of Minnesota Journal of the House, 1971 Reg. Sess., at 1214–15. Before the addition of this first paragraph, MERA provided standing only for suits alleging a general material adverse effect on the environment and allowed the "no feasible and prudent alternative" analysis as a defense. The PCA sought a paragraph adding a private cause of action to enforce its rules and regulations and a corresponding defense that was limited to showing compliance.

Soon after the act's passage, a commentator noted the difference in available defenses between the two paragraphs and concluded from the use of "other" in the second paragraph that "the language of the second paragraph seems to preclude the possibility of the specified affirmative defense being applicable to cases controlled by the first paragraph." *The Minnesota Environmental Rights Act, supra*, at 609. We agree with this reading and find an "alternatives analysis" inapposite to this action because the balancing of competing public policy concerns is part of agency rulemaking.

■ Scott County argues alternatively that it may assert the affirmative defense because the PCA effectively granted the county a waiver from the noise regulations by not enforcing them, and thus McGuire's claim falls under the second paragraph of Minn.Stat. § 116B.04 rather than the first. We find this argument unpersuasive for several reasons. Nothing in the record suggests an implied waiver by the PCA nor indicates the legal basis for PCA granting an implied waiver. In contrast, rules promulgated by the PCA outline the process for granting variances from noise regulations. *See* Minn.R. 7030.0080 (1993).

The PCA's response to Scott County's environmental assessment worksheet (EAW) for the highway project and alleged decision not to require an indirect source permit do not support the conclusion that the agency chose to waive its noise regulations. The county submitted the EAW not as a written application for a variance but, as admitted in its brief, to conform to other state highway construction requirements. Furthermore an interest source permit provides little defense to an action based on noise pollution, because it applies to air emissions rather than noise. *See* Minn.R. 7023.9005, subp. 5 (1993); Minn. Stat. § 116.06, subds. 2, 9, 15 & 16 (1992). The agency's apparent inaction on the reported noise rule violation underscores rather than bars the applicability of MERA, for it was intended to provide adequate civil remedies for private protection of environmental resources in conjunction or in lieu of government enforcement.

■ Finally, we decline McGuire's request to impose sanctions on Scott County for bad faith appeal of this case. Although we find the county's implied waiver argument disingenuous given its simultaneous submission of a variance application to the PCA, we do not think that the appeal equates to the level of misconduct required by Minn.R.Civ.P. 11 and Minn.Stat. § 549.21. *See Uselman v. Uselman*, 464 N.W.2d 130, 143 (Minn.1990).

alternative" defense to all actions brought under this statute. *See* Mich.Comp.Laws Ann. §§ 691.1202—691.1203 (West 1987). A side-by-side comparison of the Michigan and Minnesota acts demonstrates the distinct differences between the two acts.

## DECISION

The district court correctly applied Minn. Stat. § 116B.04 (1992) to reject an affirmative defense of "no feasible and prudent alternative" in a MERA action based on violation of a government environmental standard.

**Affirmed.**